IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAROLYN BARTHOLOMEW,             :        CIVIL ACTION
            Plaintiff            :
                                 :
                                 :
        v.                       :
                                 :
                                 :
ST. LUKE'S HOSPITAL –            :
ALLENTOWN CAMPUS,                :
            Defendant            :        NO. 02-2876

<u>MEMORANDUM AND ORDER</u>

McLaughlin, J.                            April 29, 2003

        The plaintiff, Carolyn Bartholomew, instituted this

action against her employer, St. Luke's Hospital, Allentown

Campus, alleging that St. Luke's discriminated against her

because of her age and sex, retaliated against her for

complaining about age and sex discrimination, and subjected her

to a hostile work environment in violation of the Age

Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) ("ADEA")

and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, <u>et seq.</u>

("Title VII").  Ms. Bartholomew has also brought a state-law

claim for sick pay under the Pennsylvania Wage Payment and

Collection Law ("WPCL"), 43 Pa. Const. Stat. Ann. 260.1 <u>et seq.</u>

        Currently pending before the Court is the defendant's

motion for summary judgment.  Because the plaintiff has not made

out a prima facie case of discrimination or retaliation and

because the defendant has articulated legitimate non-

discriminatory reasons for taking the employment actions in

question that the plaintiff has not shown to be pretextual, the
Court will grant the defendant's motion for summary judgment on
the Title VII and ADEA discrimination and retaliation claims.
Because the plaintiff has not made out a hostile work environment
claim, summary judgment is also granted on that claim.  The Court
remands the WPCL claim to the state court.

I.  Background

        Ms. Bartholomew was hired as an Admissions Clerk and
Switchboard Operator by Allentown Osteopathic Hospital on May 13,
1979.[1]  The plaintiff worked in this position until 1988, when
she was promoted to Patient Admissions Coordinator.  During the
late 1990s, Allentown Osteopathic Medical Center was acquired by
St. Luke's Hospital, and is now known as St. Luke's Hospital,

---

[1]      In deciding a motion for summary judgment, the Court
         must view the facts in the light most favorable to the
         non-moving party.  Josey v. John R. Hollingsworth
         Corp., 996 F.2d 632, 637 (3d Cir. 1993).  A motion for
         summary judgment shall be granted where all of the
         evidence demonstrates "that there is no genuine issue
         as to any material fact and that the moving party is
         entitled to a judgment as a matter of law."  Fed. R.
         Civ. P. 56(c).  The moving party has the initial burden
         of demonstrating that no genuine issue of material fact
         exists.  Once the moving party has satisfied this
         requirement, the non-moving party must present evidence
         that there is a genuine issue of material fact.  The
         non-moving party may not simply rest on the pleadings,
         but must go beyond the pleadings in presenting evidence
         of a dispute of fact.  Celotex Corp. v. Catrett, 477
         U.S. 317, 323-24 (1986).

Allentown Campus.  Plaintiff's Exhibit (hereinafter "Pl. Ex.") A,
at 12, 23, 27.

As part of her duties as Patient Admissions
Coordinator, Ms. Bartholomew was responsible for scheduling
various employees and supervising at least two full-time staff
members.  She also had responsibility for operating and equipment
budgets.  Defendant's Exhibit (hereinafter "Def. Ex.") B, at 41-
42.

In 1999, Ms. Jill Cavacini, who was twenty-two years
younger than Ms. Bartholomew, became her supervisor.  Although
her previous supervisors had given Ms. Bartholomew favorable
reviews, Ms. Cavacini received complaints from at least three
employees in the department about Ms. Bartholomew's conduct,
including complaints about scheduling and about Ms. Bartholomew's
slowness in registering patients.  Ms. Cavacini also received
complaints from managerial level employees in other departments
about Ms. Bartholomew's general demeanor.  Pl. Ex. A, at 44; Pl.
Ex. C, at 20, 41-45; Def. Ex. B, at 52.

After receiving the complaints, Ms. Cavacini pulled the
computerized records for two weeks of patient registrations,
which showed that Ms. Bartholomew was registering significantly
fewer patients than others in the department.  On average,
employees registered between thirty to forty patients a day; the

number of patients registered by Ms. Bartholomew was in the teens or low twenties.  Ms. Cavacini also personally observed Ms. Bartholomew and determined that she was very slow in registering patients.  Pl. Ex. C, at 41-50.

On April 25, 2000, Ms. Cavacini issued a first step corrective action notice to Ms. Bartholomew regarding various issues, including over-scheduling the part-time worker in her department.  Def. Ex. C.  Ms. Bartholomew objected to the corrective action both in writing and in person at a meeting with Rochelle Schaller, the director of Human Resources.  In her written response, Ms. Bartholomew complained about the favorable treatment Ms. Cavacini was giving Anne Klass, a woman approximately three to four years older than Ms. Bartholomew who held a position similar to that of Ms. Bartholomew.  Def. Ex. D; Pl. Ex. A, at 72-73, 112-13; Def. Ex. C; Def. Ex. B, at 14-16, 26-27; Def. Ex. D, at 15-26.

After hearing Ms. Bartholomew's complaints, Ms. Schaller decided that, although there was a need for improvement in Ms. Bartholomew's conduct, a written first stage warning was inappropriate.  The written warning was rescinded in favor of a verbal warning.  Ms. Cavacini testified that she had second thoughts about the warning and asked Ms. Schaller to reduce the severity of the disciplinary action; but Ms. Schaller testified

that she made the decision to reduce the disciplinary action despite Ms. Cavacini's initial resistance.  Ms. Schaller also testified that, after Ms. Schaller explained her reasons for doing so, Ms. Cavacini agreed that making the reduction was appropriate.  Pl. Ex. 2 at 8, 18-24, 30, 32; Pl. Ex. C, at 92-93; Def. Ex. J, at 32; Def. Ex. B, at 26-29.

Ms. Cavacini observed that Ms. Klass, the inpatient admissions coordinator, and Ms. Bartholomew, the outpatient admissions coordinator, were both supervising a small number of people and doing very similar jobs in the registration department.  She believed that it would make sense to consolidate the two positions into one.  Ms. Cavacini proposed this to her supervisors, and her idea was reviewed and accepted by St. Luke's. On June 5, 2000, Ms. Schaller informed Ms. Bartholomew that the registration department was being restructured and her position and that of Ms. Klass would be combined into a new position, Patient Registration Coordinator. Pl. Ex. A, at 87-88; Pl. Ex. B, at 35-37.

Ms. Bartholomew was given a copy of the new job description and given the opportunity to apply for the new position.  She was told that she would receive a severance package if she was not interested in the position.  Ms. Bartholomew informed St. Luke's that she wanted to apply for the

new position.  On June 7, 2000, she was interviewed by Ms.
Cavacini and Ms. Schaller for approximately one hour.  Pl. Ex. A,
at 87-88, 90-91; Pl. Ex. C, Ex. 9 and 10.

Ms. Schaller and Ms. Cavacini did not feel that Ms.
Bartholomew performed well in her interview.  They felt that Ms.
Bartholomew was unable to answer appropriately questions posed to
her about her problem-solving abilities, her decision-making
abilities, and the role and responsibilities of the new position.
They believed that Ms. Klass, who had also been interviewed for
the position, had performed better in her interview and was
better qualified to fulfill the job requirements.  Pl. Ex. B, at
39-43; Pl. Ex. C, at 76-81.

On June 13, 2000, Ms. Schaller and Ms. Cavacini
informed the plaintiff that Ms. Klass had been chosen for the
position and the plaintiff's employment would be terminated.  Ms.
Bartholomew inquired whether there were any other positions open
for her at that time and was told no.  Ms. Bartholomew did not
subsequently inquire about or apply for any additional positions
at St. Luke's.  The plaintiff was fifty-two years old at the time
of her termination.  Pl. Ex. A, at 5, 115-17, 128-30.

Ms. Bartholomew alleges that the defendant
discriminated against her on account of her age and sex when they
failed to hire her for the new consolidated position or any other

6

position in the St. Luke's network.[2]  She also alleges that she

was retaliated against in violation of both the ADEA and Title

VII for complaining about Ms. Cavacini's unfair treatment, that

she was subjected to a hostile work environment under the ADEA,

and that the defendant owes her compensation for sick leave that

had accrued at the time of her termination under the WPCL.

II.  Discussion

      A.  Failure to Hire and Retaliation Under Title VII and ADEA

            The decision whether to grant or deny summary judgment

under Title VII or the ADEA is governed by the Supreme Court's

burden-shifting analysis in McDonnell-Douglass v. Green, 411 U.S.

792 (1973), as clarified in Reeves v. Sanderson Plumbing Prods.,

530 U.S. 133 (2000).

            Under this analysis, the plaintiff must first make out

a prima facie case of discrimination.  Reeves, 530 U.S. at 142.

If the plaintiff does so, the defendant must present a legitimate

non-discriminatory reason for the employment action at issue.

Id.  If the defendant does so, the plaintiff must then present

evidence that the proffered reason is pretextual. Id.

---

[2]      The plaintiff stated at oral argument that this was not
         a reduction-in-force case and she was not alleging
         discrimination based on the elimination of her
         position.  Transcript of April 4, 2003 Oral Argument
         (hereinafter "T."), at 3, 22-23.

1.  <u>Prima Facie Case</u>

Although the plaintiff's ADEA discrimination claim based on failure to hire, her Title VII discrimination claim based on failure to hire, and her retaliation claim are all governed by the <u>McDonnell-Douglass</u> burden-shifting analysis, what is required to make out a prima facie case under each of these theories differs slightly.

a.  <u>Discrimination Made Unlawful by the ADEA</u>

Under the ADEA, the plaintiff must prove that age was a determinative factor in the defendant employer's decision not to hire her.  <u>Chipollini v. Spencer Gifts</u>, 814 F.2d 893, 897 (3d Cir. 1987).  The plaintiff need not prove that age was the employer's sole or exclusive consideration, but must prove that age made a difference in that decision.  <u>Id.</u>

To make out a prima facie case for a failure to hire based on age the plaintiff must show that: (1) the plaintiff was a member of a protected class, i.e. was forty years of age or older; (2) she was discharged or not hired; (3) she was qualified for the job at issue; and (4) the employer filled the position with a person who was sufficiently younger to create an inference of age discrimination.  <u>Narin v. Lower Merion Township Sch. Dist.</u>, 206 F.3d 323, 331 (3d Cir. 2000).  Only the fourth element

is in dispute in this case.

The defendant argues that the plaintiff cannot meet the fourth element because defendant hired someone older than the plaintiff. The plaintiff alleges that it is not an absolute requirement that the person filling the position be younger, only that there be sufficient evidence of discrimination.

Some courts have adopted the construction urged by the plaintiff, allowing a plaintiff to meet the requirements of the fourth element by showing other evidence that gives rise to an inference of discrimination rather than replacement by someone younger. E.g., McCarthy v. New York City Tech. College, 202 F.3d 161 (2d Cir. 2000)(replacement by older person not necessarily fatal to prima facie case where plaintiff could show other evidence of discrimination); Wright v. Southland Corp., 187 F.3d 1287, 1305 (11th Cir. 1999)(replacement by older person does not rule out possibility of age discrimination; may satisfy the fourth element with other evidence); Grabosky v. Tammac, 127 F. Supp. 2d 610 (M.D. Pa. 2000)(same).

The Third Circuit, however, has not ruled definitively on whether this approach is appropriate in this Circuit. Although the Third Circuit has stated that proof of replacement by someone "significantly younger" is required in an ADEA case, some cases hint that the fourth element is flexible; strict

adherence to the sufficiently younger requirement may not be required.  E.g., Narin, 206 F.3d at 331 (fourth element requires showing that the defendant hired someone "sufficiently younger" to give rise to an inference of age discrimination); Simpson v. Kay Jewelers, 142 F.3d 639, 651 (3d Cir. 1998)(Pollak, J., concurring) (reformulation of fourth element in reduction in force cases may be seen as a harbinger of flexible treatment of the fourth element in all ADEA cases); Torre v. Casio, 42 F.3d 825, 831 n.6 (3d Cir. 1994)(four elements are not inflexible and a rigid prima facie burden would be inconsistent with the Supreme Court's requirement that there be contextual analysis).

It is unclear how flexible the fourth element is in this Circuit, and whether the flexibility envisioned by the Third Circuit renders replacement by someone "significantly younger" an optional part of the prima facie case.[3]  This Court need not decide the precise contours of the fourth element at this time, however, because even if the Court were to follow the approach

---

[3]    Two district court cases in this Circuit reflect the uncertainty on this issue.  In Grabosky v. Tammac, 127 F. Supp. 2d 610 (M.D. Pa. 2000), Judge Vanaskie decided that the Third Circuit would not require a rigid view of the fourth element in an ADEA case and proof of replacement by someone sufficiently younger was not required.  In Gutknecht v Smithkline Beecham, 950 F. Supp. 667 (E.D. Pa. 1996), Judge Reed declined to stray from the plain language of "sufficiently younger" as a requirement for the prima facie case.

advocated by the plaintiff and allow the plaintiff to satisfy the fourth element by showing other evidence of discrimination, the plaintiff has not done so.

Even in cases that have held that the plaintiff need not show replacement by someone younger, the courts have still required some other evidence of discrimination; the fourth element of the prima facie case does not merely evaporate.[4] E.g., McCarthy v. New York City Tech. College, 202 F.3d 161 (2d Cir. 2000)(plaintiff required to show other evidence of discrimination);  Wright v. Southland Corp., 187 F.3d 1287, 1305 (11th Cir. 1999)(same); Alphin v. Sears, 940 F.2d 1497 (11th Cir. 1991)(same).

The plaintiff alleges that there is other evidence of discrimination because there was a plan by the employer to eliminate older workers through restructuring;[5] the plaintiff has not, however, provided evidence to support her allegations.  The

---

[4]    The plaintiff does not dispute that she would be required to show other evidence giving rise to an inference of discrimination.

[5]    The plaintiff has also alleged that the age difference between Ms. Bartholomew and Ms. Cavacini combined with the fact that the plaintiff received consistently good reviews until Ms. Cavacini was hired is also sufficient evidence of discrimination to satisfy the fourth element of the prima facie case.  That an older worker is reprimanded or treated unfairly by a much younger supervisor is not enough, by itself, to show that the plaintiff was discriminated against because of her age.

11

plaintiff bases the allegation on her claim that Ms. Klass was "demoted" after a little over a year on the job and was replaced by someone younger.  In her deposition, however, Ms. Cavacini stated that Ms. Klass asked to take on a position with fewer responsibilities and voluntarily stepped down from the consolidated position.  The plaintiff has offered no evidence to refute this.[6]

        b.  Discrimination Made Unlawful by Title VII

_____To make out a prima facie case of discrimination based on sex, the plaintiff must show that (1) she was a member of the protected class; (2) she was qualified for the position she sought; and (3) nonmembers of the protected class were treated more favorably.  Goosby v. Johnson & Johnson, 228 F.3d 313 (3d Cir. 2000).  As with the ADEA claims, the parties do not dispute that the plaintiff was a member of a protected class and qualified for the position she sought; only the third element is in dispute.

        In order to meet the third element, the plaintiff must

_____

        [6]     Additionally, Ms. Klass's replacement is only
        approximately one and one-half years younger than the
        plaintiff.  Even if Ms. Klass were demoted in favor of
        the replacement, it is questionable whether an
        inference of discrimination could be shown by
        replacement by someone so close in age to the
        plaintiff.

show that a similarly situated male was treated more favorably.
E.g., Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 258
(1981)(plaintiff must show that other similarly situated
employees were treated differently); EEOC v. Metal Svc. Co., 892
F.2d 341, 347 (3d Cir. 1990)(Title VII discrimination occurs
where an individual in a protected group is shown to have been
singled out and treated less favorably than others similarly
situated); Bryant v. Int'l Sch. Svc. Inc., 675 F.2d 562, 575 (3d
Cir. 1982)(plaintiff in sex discrimination claim must show that
similarly situated males were treated more favorably).

The plaintiff has alleged that she has met this
requirement because a male was hired for a St. Luke's switchboard
position after she was terminated.[7]  The plaintiff has not
provided the Court with any evidence to show that this male was
in any way similarly situated to her.  The mere allegation that a
male was hired by St. Luke's is not enough to make out a prima
facie case of sex discrimination.


c.  Retaliation Under Title VII and the ADEA

To establish a prima facie case of retaliation, the

---

[7]    The plaintiff did not apply for this position but
instead bases her claim on the fact that St. Luke's did
not notify her that the position was open or
automatically recall her to work in that position.

13

plaintiff must show that: (1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) there is a causal connection between the two.  Goosby, 228 F.3d at 323; Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001); Barber v. CSX Distrib. Svc., 68 F.3d 694, 701 (3d Cir. 1995).

To show that she engaged in protected activity, the plaintiff must show that she opposed a practice made unlawful by Title VII or the ADEA. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  The plaintiff alleges that she opposed sex and age discrimination when she complained to Ms. Schaller about the unfair treatment she was receiving from Ms. Cavacini.

In Barber, the Third Circuit held that the plaintiff's writing of a letter was not protected activity where the letter mentioned unfair treatment but did not allege that the unfair treatment was based on age. 68 F.3d at 702.  Similarly, the complaint by the plaintiff in this case is not protected activity because it only described general unfair treatment.

The plaintiff admits that she did not specifically mention age or sex discrimination in her complaint to Ms. Schaller.  She argues, however, that this was unnecessary because, as it was obvious to the plaintiff that Ms. Cavacini was "unsure of herself and resented the seniority and respect" that

the plaintiff received, Ms. Schaller should have known that the
complaint by the plaintiff was about age discrimination.  Even if
the Court were to accept that a complaint about general unfair
treatment is protected activity when the recipient "should have
known" that it was really a complaint about discrimination, the
Court does not find that the facts could show that this is such a
situation.  The plaintiff's written complaint accused Ms.
Cavacini of treating Ms. Klass, an older female, better than Ms.
Bartholomew and the other members of the department; the Court
cannot see how Ms. Schaller "should have known" that the
complaint was about age or sex discrimination.[8]

In addition to showing protected activity, the
plaintiff would also have to show an adverse employment action
and a causal connection between the two.  Although it is
questionable whether there would be any causal connection between
the complaints made by the plaintiff to Ms. Schaller and St.

---

[8]    In her deposition and her statement to the EEOC, when
asked how the retaliation related to her age and sex,
the plaintiff stated that she was retaliated against by
a younger manager because she went to the nursing
department and Bethlehem human resources about the code
alarms because of St. Luke's liability if something
happened.  The fact that the plaintiff herself believed
she was being treated unfairly because she reported
code alarms makes it even less likely that a human
resources officer would have inferred that the
plaintiff was complaining about unfair treatment based
on age or sex.

Luke's failure to hire Ms. Bartholomew for the new position, the Court need not reach this issue because there was no protected activity.

### 2.  Non-Discriminatory Reason and Pretext

The defendant has articulated a non-discriminatory reason for not hiring Ms. Bartholomew for the new registration coordinator position.  According to the testimony of the defendant's employees, the plaintiff's position was eliminated because it made more sense to combine the two jobs and have one person perform them.  The plaintiff was not hired for the new position because the two people interviewing candidates for the job did not believe that the plaintiff was the best candidate for the job.  Even if the plaintiff had made out a prima facie case of discrimination, to survive summary judgment she would have to show that these non-discriminatory reasons were pretext.

To show pretext in an ADEA or sex discrimination case, the plaintiff must either (1) show that the proffered explanation is "unworthy of credence," or (2) adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  Torre, 42 F.3d at 829 (3d Cir. 1994); Fuentes v. Perskie, 32 F.2d 759, 764 (3d Cir. 1994).

The plaintiff has not alleged that the defendant's proffered reasons for the restructuring and the hiring of Ms. Klass were not valid.[9]  Instead, the plaintiff alleges that there is evidence of pretext (1) because the defendant violated its own policy of automatically recalling terminated employees to work and (2) because it is not consistent with legitimate business reasons to not re-hire an employee with a good employment record.

The defendant's policy number 1.49 allows non-management employees affected by a reduction in force to transfer to any vacant position in the St. Luke's network and, if no position is available, to be put on the priority hire list.  Def. Ex. A.  The plaintiff alleges that the defendant violated this policy when she was not re-hired or put on the list.  The defendant argues that Ms. Bartholomew as a management employee to whom the policy did not apply, and she would have had to apply for a position to be considered for re-hire.

In her answers to the defendant's request for admissions, the plaintiff admitted that she was considered a member of management by St. Luke's.  Def. Ex. L.  At oral

---

[9]     The plaintiff does not dispute that Ms. Klass was qualified for the job, that the interviewers believed that Ms. Bartholomew was unsuccessful at her interview, that the interviewers believed Ms. Klass performed better, or that it was appropriate and desirable to combine Ms. Klass and Ms. Bartholomew's position into one position.

argument, the plaintiff confirmed that St. Luke's may have classified her as a management employee, but alleged that she did not consider herself to be a management employee or to have management responsibilities, as stated in her affidavit.  T., at 20-21; Pl. Ex. G.

The Court finds that there is no genuine issue of disputed fact about whether Ms. Bartholomew was classified as a member of management by St. Luke's, which is the relevant inquiry here.  Although Ms. Bartholomew alleges that she personally did not consider herself a management employee or think that she had managerial responsibilities, it is St. Luke's classification of her position that determines whether policy 1.49 applies to her. Because the Court finds that policy 1.49 did not apply to the plaintiff because her position was classified as management, the failure to automatically rehire her was not in violation of that policy and does not support the plaintiff's claim of pretext.

Nor is the plaintiff's allegation that it does not make good business sense to fail to rehire an employee with a strong record sufficient to show pretext.  Evidence that an employer used bad business judgment or even treated the plaintiff unfairly is insufficient to show that a proffered non-discriminatory reason was pretext.  It is not evidence that the true motivation for the action was taken against her was because of her age or

sex; nor is it evidence that the proffered reasons are unworthy of credence.  The plaintiff has not cited any cases, and the Court knows of none, holding that a plaintiff can prove pretext by a mere showing that the defendant exercised bad business judgment.

Even if bad judgment were sufficient to show pretext, summary judgment would likely still be warranted against the plaintiff because she has not shown that the defendant exercised bad business judgment.  The only thing that the plaintiff alleges to be a bad business judgment is the defendant's decision not to rehire her.  The plaintiff does not dispute, however, that there were no open positions available for her the day she was terminated and that she did not apply for or even express interest in any position thereafter.  It is questionable whether the failure to hire someone when there were no open positions or the failure to hire someone who does not express interest in or apply for a position reflects bad business judgment.

B. <u>Hostile Work Environment</u>

The plaintiff has also alleged that she was subjected to a hostile work environment by the actions of Ms. Cavacini.  It is questionable whether the plaintiff actually raised such a

claim in her amended complaint.[10]  Even if the Court assumes,
however, that she did plead such a claim it is proper for the
plaintiff to bring this claim at this time, she has not presented
sufficient evidence to support it.

A hostile work environment exists where there is
intentional discrimination that is pervasive and regular, that
had a detrimental effect on the plaintiff, and would have a
detrimental effect on a reasonable person of the same protected
class.  Kunin v. Sears Roebuck & Co, 175 F.3d 289, 293 (3d Cir.
1999).  A hostile work environment is one that is so severe that
it alters the conditions of the victim's employment.   Harris v.
Forklift Sys., 510 U.S. 17, 21 (1993).

As evidence in support of her hostile work environment
claim, the plaintiff relies on the facts that: Ms. Cavacini's
thought that the plaintiff was "very slow" compared to the other

---

[10]    The operative complaint includes one claim entitled
"Violation of Age Discrimination in Employment Act of
1967, 29 U.S.C. Section 629, et seq."  In the body of
this claim, she incorporates the preceding factual
paragraphs and then states "the plaintiff believes ...
that the defendant's decision to terminate her
employment, notwithstanding the length of her service
and good work record she had established, constituted
an illegal act of age discrimination."  The claim makes
no reference to a hostile work environment. The fact
section of the complaint alleges only that Ms. Cavacini
immediately began to harass the plaintiff about her
work, but does not make any allegation that the
harassment was based on age or sex.

workers but did not apply the same criticism to younger
employees; and Ms. Cavacini put the plaintiff on corrective
action.[11]

The facts are insufficient to show that these actions
taken against the plaintiff were discrimination.  The plaintiff
has not shown that Ms. Cavacini's perception that the plaintiff
was slow was based on her age or sex.  Although the plaintiff
alleges that it should be obvious that the perceived slowness was
based on some improper, discriminatory criteria, she does not
dispute that the computer records and Ms. Cavacini's observations
of her showed that she was indeed slower than average at
registering patients.[12]  Nor has she shown that the corrective
action was taken against her because of her age or sex.  The mere
fact that a supervisor is unsatisfied with the work performance

---

[11]    The plaintiff has also made broad, unsupported
allegations of general harassment.  Even if the Court
considers the allegation that Ms. Cavacini "harassed"
her, this would still not be enough for the claim to
survive summary judgment.  Not all workplace conduct
that can be described as "harassment" is sufficient to
state a claim for hostile work environment
discrimination.  Robinson v. City of Pittsburgh, 120
F.3d 1286, 1297 (3d Cir. 1997).

[12]    The plaintiff attempts to show discrimination by
comparing herself to younger workers whom Ms. Cavacini
did not believe to be slow.  There is no evidence,
however, that these younger workers were similarly
situated to the plaintiff; there is no evidence that
the computer records showed that they too were
registering a below-average number of patients.

21

of a female employee over forty, without more, is not sufficient to show discrimination.

The plaintiff also has failed to show that the conduct about which she complains was "regular and pervasive." The plaintiff does not describe any specific occasion on which the plaintiff was reprimanded, disciplined, or harassed about being slow. The only specific action that the plaintiff complains was the corrective action. Even if it were discrimination, this single incident would be insufficient to show that there was discrimination against the plaintiff that was pervasive and regular.

C.  <u>State Law WPCL Claims</u>

In addition to the federal Title VII and ADEA claims, the plaintiff had also included a claim for a violation of the Pennsylvania WPCL. The Court had supplemental jurisdiction over this claim under 28 U.S.C. § 1367. Because there is no independent jurisdiction over this state law claim, the Court remands this claim back to the Court of Common Pleas of Lehigh County, from which this case was originally removed on May 14, 2002.

An appropriate order follows.