**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLYN BARTHOLOMEW,** | : | |
| | : | **Civil Action No. 02-CV-2876** |
| **Plaintiff,** | : | **(Hon. Mary A. McLaughlin)** |
| | : | |
| **v.** | : | |
| | : | |
| **ST. LUKE'S HOSPITAL—ALLENTOWN** | : | |
| **CAMPUS,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

## <u>ORDER</u>

AND NOW, this _____day of_____, 2003, upon consideration

of the Defendant's Motion for Sanctions pursuant to F.R.C.P. No. 11, and in consideration of the

Plaintiff's Memorandum of Law in Opposition to said Motion for Sanctions, it is hereby Ordered

and Decreed that the Defendant's Motion for Sanctions pursuant to Rule 11 is denied and

dismissed, with prejudice.


BY THE COURT:




_____

Mary A. McLaughlin, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLYN BARTHOLOMEW,** | : | |
| | : | **Civil Action No. 02-CV-2876** |
| **Plaintiff,** | : | **(Hon. Mary A. McLaughlin)** |
| | : | |
| **v.** | : | |
| | : | |
| **ST. LUKE'S HOSPITAL—ALLENTOWN** | : | |
| **CAMPUS,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SANCTIONS**

**INTRODUCTORY STATEMENT**

On July 1, 2002 the Plaintiff filed an Amended Complaint in this Court alleging age and

sex discrimination in employment under the Age Discrimination in Employment Act, 29 U.S.C.

629 *et seq*., and Title VII of the Civil Rights Act of 1964, as amended, on November 21, 1991,

by the Civil Right Act of 1991, 2000 U.S.C. § 2000e-1 *et seq*.  Invoking the court's supplemental

jurisdiction, the Plaintiff also brought a claim under the Pennsylvania Wage Payment and

Collection Law, 43 P.S. Section 260.1 *et. seq*.

The Defendant filed a Motion to Dismiss the Amended Complaint or in the Alternative

for Summary Judgment, which was denied by this Court last August.  The Defendant thereafter

filed a Motion for Summary Judgment, based in large part upon many of the same issues upon

which this Court had previously ruled in its decision denying the Defendant's Motion to

Dismiss.  At approximately the same time counsel for Defendant filed its Motion for Summary

Judgment, counsel for Defendant also threatened to file a Motion for Sanctions unless the

Plaintiff withdrew her claims.  **The Plaintiff did not agree to withdraw her claims, and**

**advised the Defendant that Rule 11 should never be deployed as a litigation tactic or as a**

**strategy to gain tactical advantage as a proceeding draws toward a conclusion.  See <u>In re</u>**

**<u>Cendant Corporation Derivative Action Litigation,</u> 96 F. Supp. 2d 403, 406 (D.N.J. 2000),**

**citing <u>Edberg v. Neogen Corp.</u>, 17 F. Supp. 2d 104, 109 (D. Conn. 1998)**.

The Motion for Sanctions was clearly used by counsel for Defendant merely as a

litigation tactic designed to bludgeon and to intimidate the Plaintiff into dropping her case.  Prior

to filing its Motion for Sanctions, the Defendant presented the Plaintiff with a copy of its

proposed Rule 11 Motion, demanding that the Plaintiff withdraw her Amended Complaint.  In

reality, however, Defendant was demanding that the Plaintiff withdraw an Amended Complaint

that <u>had already been on record</u> for nearly a year.  Said Amended Complaint had already been

vetted via survival of an extensive Motion to Dismiss. This type of bullying tactic on the part of

the Defendant flies in the face of the true purpose and spirit underlying Rule 11.

In its Memorandum in Support of the Motion for Sanctions, the Defendant re-argues the

disputed issues in this case, and takes the position that the Plaintiff's inability to prove her claims

renders those claims frivolous and sanctionable.  The Defendant also tries to create the

impression that the Plaintiff 's claims were brought in bad faith, although the Defendant engages

in a transparent distortion of the record to support this impression.

The Plaintiff's claims in this case were brought in good faith, were consistently maintained throughout the litigation, and were well within the legal parameters of a cognizable claim under the ADEA and Title VII. The fact that the Plaintiff was unable in the opinion of the Court to adduce sufficient evidence in the Summary Judgment record to persuade the court that her claims should go to a jury is not, as the Defendant maintains, tantamount to a finding that those claims were frivolous. For these reasons, as well as others discussed below, the Defendant's Motion for Sanctions should be denied.

<u>**STATEMENT OF FACTS**</u>

Deposition transcripts were included in the summary judgment appendix previously filed by the Plaintiff, and the references contained herein can be located in the Plaintiff's Appendix filed in support of her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. The Plaintiff was hired as an Admissions Clerk and Switchboard Operator by Allentown Osteopathic Hospital on May 13, 1979. The Plaintiff is a 54 year-old female. The Plaintiff worked for Allentown Osteopathic Hospital on a continuous basis, and her employment reviews were always good. In 1988 the Plaintiff was placed in the position of Patient Admissions Coordinator.

During the late 1990's, Allentown Osteopathic Medical Center was acquired by St. Luke's Hospital, and it is now referred to as St. Luke's - Allentown Campus. After Susan Strasburg, Ms. Bartholomew's supervisor at the time, gave the Plaintiff her outstanding 1999 review, Strasburg was replaced by Jill Cavacini ("Cavacini"), who then became Plaintiff's new supervisor. Cavacini is approximately twenty-five years younger than the Plaintiff. Plaintiff claims that Cavacini immediately embarked upon a course of action intended to get the Plaintiff fired.

An important aspect of this case, which confirmed the Plaintiff's belief that she had been subjected to age discrimination, was that Cavacini's version of the facts differed markedly from the version told by Cavacini's superior, Rochelle Schaller.  Schaller testified that Bartholomew raised some concerns in a meeting between the two of them on May 25th, 2000, and these concerns led Schaller to the conclusion that Cavacini's complaints involved something that should have been taken care of at the verbal stage, but they did not warrant a first written step. (Deposition of Rochelle Schaller at 22).  One of the concerns raised by Bartholomew was the fact that she felt that Cavacini, a much younger supervisor, was not treating Bartholomew fairly. (Bartholomew Summary Judgment Affidavit at ¶7).  It was apparent to the Plaintiff that Cavacini, as a younger manager, was unsure of herself and therefore resented the Plaintiff's seniority at the hospital, the knowledge the Plaintiff had acquired over the years, and the respect accorded the Plaintiff by her peers.  (Bartholomew Affidavit at ¶ 8 ).

Schaller called Bartholomew and told her they were rescinding the corrective action and she would be free to apply for the job they were offering.  (Deposition of Carolyn Bartholomew at 83).  On the same day, she also received notice that her position was being eliminated.  Ms. Bartholomew had become suspicious that her position was being eliminated because she was being marginalized and was no longer included in departmental management issues.  Cavacini and Klass would work on projects together and exclude Ms. Bartholomew.  (Bartholomew Dep. at 84).  According to Schaller, it was she who contacted Cavacini and told Cavacini that the action should be changed to a verbal warning.  According to Schaller, Cavacini was resistant, but Schaller made it clear that it was Schaller's decision to make.  (Schaller Dep. at 23, 43).

5

The fact that two management employees, both of whom admit to clear recollection of the events, presented such different stories confirmed the Plaintiff's belief that her age, rather than a legitimate business reason, was the motivation behind her discharge.  The discharge came in the form of an *ad hoc* "restructuring" of the department in which the Plaintiff worked.  Both the Plaintiff and another older employee, Anne Klass, were told that they were going to lose their jobs.  A new job had been created, and both Plaintiff and Klass were forced to compete for it.  Plaintiff had more seniority than Klass, which should have been a "positive" but was not.  And, in a final cruel twist of fate, Plaintiff had to be "interviewed" for the job by her tormentor, Cavacini.

On Monday, June 12th, Ms. Bartholomew was ill.  Cavacini called her in the evening that day to ask if she was coming in Tuesday.  When Ms. Bartholomew came in Tuesday, that was when Cavacini and Rochelle told her she did not get the job and that there was no other job for which she could apply.  Miss Klass did get the job.  (Bartholomew Dep. at 93).

 Although Klass initially got the new job that both she and Plaintiff had sought, she was subsequently relegated to a subordinate position in the department, at a much lower rate of pay, in not much more than a year.  The net result of this flurry of activity was the elimination of and/or marginalization of two older workers in about a year's time.  An investigation of the available facts revealed that there was a reasonable basis for concluding that Defendant was using position elimination and job restructuring targeted at older workers such as the Plaintiff.  The Plaintiff's testimony regarding her treatment by Ms. Cavacini provided an additional basis for a possible age-based animus.  Reasonable grounds also existed to believe that open jobs for

6

which Ms. Bartholomew was qualified were subsequently advertised and then filled by younger

female or male employees after Plaintiff's termination.  (Bartholomew Dep. at 110).

## II.    PRIMA FACIE CASE ANALYSIS

Although the theory of discrimination advanced in favor of the Plaintiff's claim is difficult

to prove because this is a pretext case based upon circumstantial evidence, it is clearly a type of

indirect evidence claim which would be recognized under ADEA and Title VII jurisprudence.

See Sheridan v. E.I. Dupont de Nemours and Co., 100 F.3d 1061, 1067 (3rd Cir. 1996) (en

banc), cert. denied, 521 U.S. 1129, 117 S. Ct. 2532, 138 L. Ed. 2d 1031 (1997).  Compare,

Memorandum In Support of Defendant's Motion for Sanctions at 18-19.  See also, e.g., Costa v.

Desert Palace, Inc., 299 F.3d 838 (9th Cir. en banc 2002) (the prima facie case analysis

adumbrated under McDonnell Douglas is not readily conducive to pat compartmentalization or

rote logic); Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985) The Meiri court stated that the

McDonnell Douglas elements of proof "were not intended to be 'rigid, mechanized or

ritualistic.'  Rather, they were intended only to promote the general principle that a Title VII

plaintiff must carry the initial burden of offering evidence adequate to 'raise[ ] an inference of

discrimination.'"  Id. (citations omitted) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567,

577 (1978)).

As noted by the Eleventh Circuit Court of Appeals in Wright v. Southland Corp., 187
F.3d 1287, 1292-93 (11th Cir. 1999), "[a]lternatively, the plaintiff may forego McDonnell
Douglas and simply attempt to prove illegal discrimination "under the ordinary standards of
proof".  Hence, the Defendant's insistence on a formulaic, mechanized adherence to evidentiary
analysis in establishing a prima facie case does not seem to comport with current case law.  For
example, in Green v. Safeway Stores, Inc., 98 F.3d 554, 562-63 (10th Cir. 1996), the court found
that even though a 57 year old had replaced a 52 year old plaintiff, there was reasonable support

shown that this replacement was only temporary and was established as a defense against any age discrimination claim by the plaintiff. Moreover, in Tarshis v. The Riese Organization, 211 F.3d 30 (2d Cir. 2000), a 67 year old restaurant employee was discharged when the restaurant in which he had been working had been closed. *The court found a discriminatory intent arising from the fact that a good employee with twenty years of superior service could not be placed at any other suitable position anywhere within the defendant's wider organization.*

Additional facts are discussed in the context of the legal arguments set out below.

## II.    THE DEFENDANT HAS FAILED TO MEET THE BURDEN OF ESTABLISHING A BASIS FOR AN AWARD OF SANCTIONS.

The current standard for determining whether a pleading or paper has been signed in contravention of Rule 11 is "reasonableness under the circumstances." Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3rd Cir. 1987); Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3rd Cir. 1985). See also, *e.g.*, Solomen v. Redwood Advisory Co., 183 F. Supp. 2d 748, 753 (E.D. Pa. 2002) (as Judge Brody noted in Solomen, this case falls into the heartland of employment disputes); Lawrence v. City of Bethlehem, et al., 1997 U.S. Dist. Lexis 19167 (E.D. Pa. December 4, 1997); Warren v. City of Carlsbad, 58 F3d 439, 443 (9th Cir 1995).

The Third Circuit has interpreted the language of Rule 11 to prescribe sanctions only in ***exceptional circumstances*** where a claim or motion is patently unmeritorious or frivolous. Doering v. Union County Board of Chosen Freeholders, 857 F.2d 191, 194 (3rd Cir. 1988); Bensalem Township v.International Surplus Lines Insurance Co., 38 F.3d 1303, 1314 (3rd Cir. 1994). In other words, Rule 11 sanctions are appropriate "only if the filing of the complaint [or amended complaint] constituted abusive litigation or misuse of the court's process." Teamsters

Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66, 68 (3rd Cir.), *cert. denied*, 488 U.S. 848, 102 L.Ed.2d 101, 109 S.Ct. 128 (1988)).  Moreover, the Court of Appeals for the Third Circuit has repeatedly advised that Rule 11 sanctions are not to be imposed unless the reviewing court has found exceptional circumstances.  Doering, supra, 857 F.2d at 194; Gaiardo, supra, 835 F.2d at 483; Morristown Daily Record, Inc. v. Graphic Comm. Union Local 8N, 832 F.2d 31, 32 n.1 (3rd Cir. 1987).

In an age discrimination case in which in which a motion to dismiss and a motion for sanctions were denied, the court made it clear that the party seeking sanctions must meet a heavy burden:

> [A]lthough novel, plaintiff's claim does not contradict the express terms of 626(f).  Further, SmithKline has failed to cite any directly controlling cases addressing plaintiff's claim, and has failed to demonstrate that plaintiff's arguments are not well grounded in fact, or well grounded in law, or that there is any indication that plaintiff's complaint was asserted for an improper purpose.  I have denied the motion to dismiss; I therefore will not award SmithKline counsel fees.

Dibiase v. SmithKline Beecham Corp., 834 F. Supp. 143, 148 (E.D.Pa. 1993).

In the case at bar, this Court also denied the Defendant's Motion to Dismiss last August, and this fact is quite significant to the consideration of the propriety of sanctions.  See Gillette Foods Inc. v. Bayernwald-Fruchteverwertung, GmbH, 977 F.2d 809, 814 (3rd Cir. 1992) (reversing award of sanctions where court had indicated in previous orders that Plaintiff's claim was sufficiently plausible to survive motions to dismiss and summary judgment).

Although this court ultimately ruled that the Plaintiff had not proffered sufficient evidence in the summary judgment record sufficient to submit the Plaintiff's claims to a jury, the Plaintiff's legal theories were well within the parameters of legitimate ADEA claims. The Defendant appears to take the position, however, that because the Plaintiff's claims were not supported by sufficient facts to withstand summary judgment, they are frivolous. In Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 95 (3rd Cir. 1988) the Third Circuit addressed the scope of a reasonable pre-filing inquiry in a case in which summary judgment was granted to the defendant. The court held that sanctions were not warranted, and stated, in pertinent part, as follows:

> A requirement that counsel, before filing a complaint, secure the type of proof necessary to withstand a motion for summary judgment would set a pre-filing standard beyond that contemplated by Rule 11. At the time plaintiffs' counsel filed the complaint here, he knew facts that supported a reasonable suspicion of cooperation between defendants and other parties who could have been expected to benefit from the defendants' intransigence. These factual circumstances and the rational inferences that may be drawn from them convince us that the allegations of the first count comported with Rule 11's pre-filing investigation requirement.

Id. 847 F.2d at 95.

The Defendant contends that the replacement of the Plaintiff by an older woman, in and of itself, demonstrates that there was an "absence of any reasonable basis in fact or law for any claim of age discrimination." Defendant's Memorandum in Support of Motion for Sanctions at 2. This argument is the cornerstone of the Defendant's Motion for Sanctions. As this Court noted in its opinion, however, "[i]t is unclear how flexible the fourth element is in this Circuit,

10

and whether the flexibility envisioned by the Third Circuit renders replacement by someone 'significantly younger' an optional part of the prima facie case." Memorandum and Order, No. 02-2876 at 10 (April 29, 2003).

As this Court acknowledged, there is authority in the Third Circuit which would support such a view. See Grabosky v. Tammac, 127 F. Supp. 2d 610 (M.D.Pa. 2000); see also, Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 353 (3rd Cir. 1999). Thus, the crux of the Defendant's argument, that replacement by an older female renders the Plaintiff's claim frivolous, is not well-taken and should be rejected. Moreover, at oral argument on the summary judgment which was conducted by the Court on April 4, 2003, Plaintiff pointed out that ultimately, the job in question was given to a woman a year younger than the Plaintiff. In the Second Circuit, **the replacement by someone one year younger was sufficient to establish a prima facie case of age discrimination. See Nembhard v. Memorial Sloan-Kettering Cancer Center, 918 F. Supp. 784 (S.D.N.Y. 1996), aff'd, 104 F.3d 353 (2d Cir. 1996).**

In any event, numerous cases have held that non-class replacement is not required to establish a prima facie case of ADEA discrimination, if additional evidence of discrimination is present in the record. See, e.g., See, e.g., Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996) (stating  non-class replacement  is not necessary; a plaintiff may be able to show discharge was result of protected attribute although employer hired same class  replacement); Williams v. Trader Publ'g Co., 218 F.3d 481, 485 (5th Cir. 2000) (finding non-class replacement  is not essential to establish prima facie case);  Howard v. Roadway Express, Inc., 726 F.2d 1529, 1535 (11th Cir. 1984) (pointing out that the hiring of a same class replacement

may in fact be a defensive move on the employer's part); Cumpiano v. Banco Santander P.R., 902 F.2d 148, 155 (1st Cir. 1990) (stating plaintiff can fulfill fourth prong without showing replacement possessed protected attribute); Bina v. Providence Coll., 39 F.3d 21, 24-25 (1st Cir. 1994) (agreeing with district court's ruling that plaintiff may establish prima facie showing of discriminatory discharge by showing "position was filled by someone outside the protected group, or that 'the employer had a continued need for someone to perform the same work after [the complainant] left'"); Pagano v. Frank, 983 F.2d 343, 348 n.7 (1st Cir. 1993) (noting plaintiff must only show employer sought replacement of "roughly equivalent qualifications"); Lipsett v. Univ. of P.R., 864 F.2d 881, 899 (1st Cir. 1988) (stating plaintiff only must show that "employer sought someone to perform the same work after he or she left"); Nieto v. L&H Packaging Co., 108 F.3d 621, 624 n.7 (5th Cir. 1997) (stating that replacement with member of same protected class does not preclude establishment of prima facie case of Title VII discriminatory discharge); Byrd v. Roadway Express, Inc., 687 F.2d 85, 86 (5th Cir. 1982) (noting that replacement by member of protected class does not negate possibility that discharge was motivated by discrimination); Jones v. W. Geophysical Co. of Am., 669 F.2d 280, 284 (5th Cir. 1982) (stating replacement of a minority employee with non-minority is not only way to create inference of discriminatory intent); Stella v. Mineta, et al., 284 F.3d 135, 145-46 (D.C. Ct. App. 2002) (collecting cases holding that non-class replacement unnecessary in discrimination cases).

The United States Court of Appeals for the Eighth Circuit also appears to have adopted this interpretation. See Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir.

1994) (stating plaintiff must demonstrate that discharge occurred in circumstances which allow court to infer discrimination); Walker v. St. Anthony's Med. Ctr., 881 F.2d 554, 558 (8th Cir. 1989) (same).  In Walker, the Eighth Circuit stated that plaintiffs who are replaced by members of their protected class may still be able to establish that that they were the "objects of impermissible discrimination."  Id. The Eighth Circuit further reasoned that "the sex of [the plaintiff's] replacement, although a relevant consideration, is not necessarily a determinative factor in answer to either the initial inquiry of whether she established a prima facie case or the ultimate inquiry of whether she was the victim of discrimination." Id.

While the Defendant complains of purported factual misstatements in the Plaintiff's submissions, the Defendant engages in a bald rewriting of the facts in this case and a misleading characterization of the Plaintiff's submissions to this Court.  The Defendant excoriates the Plaintiff for purportedly failing to cite the Third Circuit case of Anderson v. Conrail, 297 F.3d 242, 250 (3rd Cir. 2002), despite the fact that the Plaintiff did not advance a Reduction In Force [RIF] theory.[1]  As the Defendant admits, however, the Plaintiff did cite the Anderson v. Conrail case in the Opposition to the Defendant's Motion to Dismiss.  Notably, whether or not any given case is a RIF case is a jury question.  See Marzano v. Computer Science Corp., et al, 91 F.3d 497, 506 (3rd Cir. 1996).

---

[1] The discussion of the RIF context in Plaintiff's submissions was in response to the Defendant's characterization of the case.  In Part I of its Brief in Opposition to the Motion for Summary Judgment, the Plaintiff took the position that the case should be analyzed under the traditional McDonnell-Douglas approach.

In any event, the ruling of the court in <u>Anderson,</u> that a retained employee in the RIF context must be similarly situated for purposes of comparison, was not a watershed, and Plaintiff in fact acknowledged the "similarly situated" standard.  Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment at page 28.  Although the Plaintiff maintains that <u>Anderson</u> was not controlling in the instant case, even if it was, the Plaintiff did not advance a theory which contradicted the <u>Anderson</u> holding.[2]

The Defendant also labels as false the Plaintiff's statement that the Defendant "got rid of" Anne Klass.  Significantly, the Defendant makes this accusation in the face of testimony by Jill Cavacini which clearly demonstrates that Klass was terminated from her ***supervisory*** position in Cavacini's department, and thereafter assumed the position of a staff member in the department, at a significantly lower rate of pay.

It is readily apparent from the Plaintiff's Memorandum in Opposition to Summary Judgment that Anne Klass was removed from her previous position in the <u>same department</u> from which Plaintiff was terminated, and that Ms. Klass was removed from her prior position by the <u>same younger manager</u>, Jill Cavacini, who had previously terminated the Plaintiff.  The point that was being made was that this younger decision-maker, Jill Cavacini, harbored a bias against older employees, and she pursued a plan to destroy the long-term careers of **both** Ms. Klass <u>and</u> Ms. Bartholomew. Granted, Ms. Klass ended up still <u>holding a job</u> in the department, but that lower level job was indeed a far cry from the supervisory position she had previously enjoyed

---

[2]It is both appropriate and significant that this Court did not cite <u>Anderson v. Conrail</u> in its Memorandum and Order granting summary judgment.

after many years of service to the hospital.  This was all previously explained by the Plaintiff in detailed submissions to the Court as well as at oral argument.

The Plaintiff's summary judgment brief emphasized that the Plaintiff contends that discriminatory intent is evinced by the actions taken by Ms.Cavacini in eliminating or marginalizing two older workers under her supervision in a period of approximately one year. Moreover, it was also pointed out that Ms. Klass, after being let go by Ms. Cavacini, was shunted into a lower paying, non-supervisory job in another department, ***which Ms. Cavacini inexplicably insisted in her deposition did not constitute a demotion.***

The fact that Anne Klass remains in a lesser position in the Hospital does not vitiate the argument raised by Plaintiff against Ms. Cavacini.  In fact, the ratcheting down of Ms. Klass' position actually <u>bolsters</u> the strength of the Plaintiff's basis for believing that that Ms. Cavacini did not want to contend with older workers in positions of authority in her department.  She wanted them out, either by firing them or by demoting them.

In making this accusation, the Defendant fails to mention that at page 6 of the Plaintiff's Memorandum in Opposition to Summary Judgment, it is stated that Anne Klass was subsequently removed from the position she was awarded over the Plaintiff.  Plaintiff expressly cited footnote 6, page 6, ***of the Defendant's brief*** in support of that statement, wherein it is indicated that Ms. Klass was taken out of that job in one year.  In addition, in the Plaintiff's Appendix, <u>all</u> of the deposition transcripts of <u>all</u> of the witnesses were included in their entirety. The Plaintiff consistently cross-referenced the transcripts themselves, thereby encouraging the reader to turn to the <u>actual testimony</u> of the witnesses.  The facts are found in the transcripts

15

themselves, and a lawyer intending to mislead the reader certainly would not encourage the

reader to turn to the actual testimony, were he not confident that the actual witness testimony

supported his legal arguments.  *The Defendant's Appendix, in stark contrast, contains only*

*excerpts of the deposition transcripts.*

In the Memorandum In Support of Defendant's Motion for Sanctions, the Defendant

identifies Plaintiff's counsel by name, casts aspersions on his honesty, and accuses Plaintiff's

counsel of misrepresentation and bad faith.  Although an attorney may be strident in attacking

the legal arguments of counsel opposite, an attorney should never seek to gain tactical advantage

by disparaging opposing counsel personally in a document that purports to be his legal brief.

The *ad hominem* nature of many of the Defendant's allegations is clearly improper.  A lawyer

certainly has an obligation and a duty to represent his client zealously and with diligence.

However, as noted by the New Jersey District Court in a 1998 case:  "the circumstances of this

case . . . present the unhappy picture of a lawyer who has crossed the boundary of legitimate

advocacy into personal recrimination against his adversary."  Thomason v. Norman E. Lehrer,

P.C., 182 F.R.D.121, 123 (D.N.J. 1998).   "Lawyers are not free, like loose cannons, to fire at

will upon any target of opportunity which appears on the legal landscape.  The practice of law is

not and cannot be a free fire zone."  Id. at 123.  See also, *e.g.*, Cannon v. Cherry Hill Toyota,

Inc., 190 F.R.D. 147, 161-62 (D. N.J. 1999) (use of unsubstantiated personal attacks and unduly

inflammatory language in briefs does nothing to assist the Court in deciding the merits of a

motion, wastes judicial resources by requiring the Court to wade through the superfluous

verbiage to decipher the substance of the motion, does not serve the client's interests well, and generally debases the judicial system and the profession).

Counsel for the Plaintiff has previously never had to defend a Rule 11 motion in more than twenty-five years of practicing law in this district (Plaintiff's counsel was admitted to the bar of the U.S. District Court for the Eastern District of Pennsylvania on January 6, 1978). The Defendant's action represents the first, only, time that Plaintiff's counsel has been subjected to such a motion. Although counsel for the Plaintiff has taken on some cases in which discrimination plaintiffs are in a difficult position, factually and legally, such representation has always been undertaken in a good faith attempt to afford those plaintiffs the best possible opportunity to pursue a reasonable claim within the existing boundaries of Title VII, ADEA and ADA jurisprudence.

Counsel for Plaintiff is well-aware of this Court's familiarity with and knowledge of employment discrimination law. Yet the Defendant repeatedly asserts that Plaintiff's counsel misled, or attempted to mislead the court regarding certain legal arguments. The arguments made by Plaintiff's counsel, however, were appropriately a good faith, zealous advocacy of the Plaintiff's claims. There is no reason to suppose that this court was, or could be misled regarding the applicable law.

***Rule 11 must not be used to "chill" zealous advocacy.*** See <u>Smith v. BIG Corp</u>., 869 F.2d 194, 202 (3rd Cir. 1989); <u>Napier v. Thirty or More Unidentified Federal Agents</u>, 855 F.2d 1080, 1091 (3rd Cir. 1988); <u>Greiss v. Main Line Auto Wash</u>, 1989 WL 89227 at *1 (E.D. Pa. August 1, 1989); Fed. R. Civ. P. 11 Advisory Committee Notes ("The rule is not intended to chill

an attorney's enthusiasm or creativity in pursuing factual or legal theories.").  See also, *e.g.*,

Nichols v. The Stroh Brewery Company, Civil No. 89-0435, 1989 U.S. Dist. LEXIS 15891

(M.D. Pa. December 21, 1989) (Rule 11 sanctions are appropriate only if the filing of the

complaint constituted abusive litigation or misuse of the court's process); Waltz v. County of

Lycoming, et al., 974 F.2d 387, 390 (3rd Cir. 1992) (noting a widespread concern that disparity in

the imposition of sanctions may have a chilling effect upon creative advocacy, particularly in

civil rights cases); Bridges v. Diesel Service, Inc., Civil Action No. 94-2101, 1994 U.S. Dist.

LEXIS 9429 (E.D. Pa. July 13, 1994) (Court notes that Rule 11 sanctions should be reserved for

those exceptional circumstances where the claim asserted is patently unmeritorious or frivolous,

and refers to the need to avoid "chilling" Title VII litigation).

Awarding sanctions in this case would not only create an ominous precedent, but it would

undoubtedly have the effect of diminishing an attorney's willingness to take on any employment

discrimination case that was not a guaranteed winner.  In a day and age when it is already

difficult enough for those victimized by employment discrimination to oppose the well-financed

legal defenses of major corporations, it would fly in the face of public policy and Congressional

intent to lay down yet another hurdle for plaintiffs to have to overcome in the already difficult

process of opposing workplace discrimination.  See, e.g., Hunter, et al. v. Earthgrains Co.

Bakery, et al., 282 F.3d 144, 156 (4th Cir. 2002), citing Blue v. U.S. Dept. of Navy, 914 F.2d

525 (4th Cir. 1990) (referring to how the lawyers in Brown v. Bd. Of Education in the 1950's

would have been sanctioned if it was forbidden to argue a position contrary to precedent); Palov

v. Ikon Office Solutions, Inc., 2001 U.S. Dist. Lexis 158  (D. Md. January 4, 2001) (defendant,

although prevailing party, was not entitled to an award of attorney's fees and costs because plaintiff's case was not frivolous, unreasonable or without foundation).

The Plaintiff has not filed a cross-motion for Rule 11 sanctions against counsel for Defendant, despite the fact that the Defendant's Motion is frivolous in itself.  The court has a right to award the Plaintiff attorney's fees incurred in ***responding*** to a frivolous Rule 11 motion. See Fisher Bros. v. Cambridge-Lee Industries, et al., 585 F. Supp. 69 (E.D. Pa. 1983). However, the Plaintiff would welcome such relief if, in the court's wisdom it deems it to be appropriate.  In making such a determination, the Court might consider that an attempt to file a Rule 11 motion a year after a case has been filed violates the requirement that such a motion be filed "as soon as possible after the discovery of the alleged Rule 11 violation".  See Project 74 Allentown, Inc. v. Frost, et al., 143 F.R.D. 77, 87 (E.D. Pa. 1992), citing Mary Ann Pensiero, supra, 847 F.2d at 100; Jacques v. DiMarzio, Inc., 216 F. Supp.2d 139 (E.D. N.Y. 2002) (employer's counsel filed a counterclaim in an ADA case, judge issued Rule 11 sanctions against the attorney who filed the counterclaim).

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this court deny the Defendant's Motion for Sanctions.

Respectfully submitted,

_____

DONALD P. RUSSO, ESQUIRE
Attorney for Plaintiff
117 East Broad Street
P.O. Box 1890
Bethlehem, PA  18016-1890
(610) 954-8093
Attorney I.D. #25873

## <u>CERTIFICATE OF SERVICE</u>

I, Donald P. Russo, Esquire, do hereby certify that on this date I did serve a true and correct copy of the within Plaintiff's Memorandum of Law in Opposition to Defendant's Motion For Sanctions upon the following individual, via Electronic Filing and regular first class mail, postage pre-paid, addressed as follows:

Sean M. Hart, Esquire
HEIMBACH, SPITKO & HECKMAN
The Capri Building
535 Hamilton Street, Suite 200
Allentown, PA  18101-1512

Date: _____          _____
                                        DONALD P. RUSSO, ESQUIRE
                                        Attorney for Plaintiff