UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROLYN BARTHOLOMEW,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | Civil Action No. 02-CV-2876 |
| : | (Hon. Mary A. McLaughlin) |
| **ST. LUKE'S HOSPITAL - ALLENTOWN CAMPUS,** : | |
| : | |
| **Defendant** : | Jury Trial Demanded |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES**

**AND NOW,** comes Defendant, St. Luke's Hospital - Allentown Campus ("St. Luke's"), by and through its counsel, Heimbach, Spitko & Heckman and files this Memorandum of Law in support of its Motion for Attorney's Fees. In support thereof, Defendant avers the following:

**I.   FACTS**

This case arises as a result of the elimination of Plaintiff's at-will employment position and subsequent termination by St. Luke's on or about June 13, 2000.  By letter dated July 19, 2000, Plaintiff's counsel first informed Defendant that Plaintiff intended to file a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had terminated her employment in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").  See Exhibit "A".

By letter dated July 24, 2000,  Defendant's counsel reminded Plaintiff that she had no viable age discrimination claim because Defendant had eliminated her position pursuant to restructuring of her department and offered a new consolidated position to an older female

instead of Plaintiff based on its assessment of the candidates' qualifications for same. See Exhibit "B".

Despite being placed on notice of the absence of any reasonable basis in fact or law for any claim of age discrimination, on or about September 21, 2000, Plaintiff, through her attorney, filed a charge of employment discrimination with the EEOC, alleging that Defendant terminated Plaintiff's employment because of her age and sex, and in retaliation for purported opposition to discrimination. See Exhibit "C" at pp. 11-12.

On or about January 22, 2001, Plaintiff filed written responses to four (4) different EEOC questionnaires seeking more information about Plaintiff's aforesaid allegations of discrimination. See id. at pp. 22-37, 52-62. One of the questionnaires filed on Plaintiff's behalf was entitled, "Charge Information Questionnaire." When Plaintiff was asked on that questionnaire to describe the reason she believed Defendant eliminated her position, Plaintiff replied only:

> I believe I was retaliated against due to the fact that I reported to my supervisor, the nursing department, as well as Human Resources at Bethlehem that the code alarms were not manned in the evenings, or on the weekends. When only one person was on switchboard, things seemed to deteriorate. I discussed this with my supervisor (I was only concerned with the patients' welfare), i.e. code blue, fire alarms, etc.

See id. at p. 24.[1] Nowhere in any of Plaintiff's four (4) EEOC questionnaires filed by her attorney are there any facts alleged to support her claim that her position was terminated due to her age, sex and/or in retaliation for opposing any practices made unlawful by federal or state anti-discrimination law. See id.

---

[1] These sworn statements made by the Plaintiff to the EEOC directly contradict the allegations of her Complaint in which she alleges that she was retaliated against because of her opposition to age/gender discrimination.

In Plaintiff's Performance-Related Discipline Questionnaire, Plaintiff was asked why she believed that the corrective action she received was motivated by her age, sex or in retaliation for opposition to discrimination. Plaintiff simply referred back to the above-quoted language in her Charge Information Questionnaire and her Involuntary Layoff Questionnaire which is described below. See id. at pp. 32 (¶ 17).

While Plaintiff marked the boxes for age, sex and retaliation in her Involuntary Layoff Questionnaire, when she was asked why she believed those bases were a factor in her position being eliminated, Plaintiff alleged only that she was subjected to retaliation by Ms. Cavacini who was "angered that I rebutted her 'corrective action' of me to the H.R. Dept." See id. at p. 56, ¶ 14.

Similarly, when Plaintiff was asked why she believed that her membership in the aforementioned protected classes had resulted in Defendant not selecting her for the new Patient Registration Coordinator position, Plaintiff again indicated that because she had submitted a written rebuttal to Defendant's Human Resources Department regarding Ms. Cavacini's corrective action of April 25, 2000, she did "...not believe my supervisor [Ms. Cavacini] would choose me...". See id. at p. 37, ¶ 20.

On or about February 13, 2001, the EEOC, without requesting any response or even a single document from Defendant, sent a letter to Plaintiff, with a copy to her attorney, indicating that the investigator had reviewed the questionnaires and information/evidence that she had submitted, it was unlikely that continued investigation would result in a finding of unlawful discrimination and that the investigator would be recommending that the EEOC dismiss the charge for lack of merit. The EEOC investigator summarized the basis for her conclusion as "the

individual selected for the Patient Registration Coordinator position for which you applied is also female and is *older* than you.  Furthermore, you have not alleged retaliation for filing a charge of employment discrimination, participating in the investigation of such a charge and/or opposing a practice made illegal by any of the statutes enforced by the EEOC."  (emphasis in original).  See letter from EEOC attached hereto as Exhibit "D".

Based on Plaintiff's submissions alone, and without soliciting any information from Defendant, the EEOC proceeded to dismiss the charge for lack of merit by Dismissal Notice dated February 26, 2001.  See "Right To Sue" letter attached hereto as Exhibit "E".  Undeterred by the EEOC's findings, on or about May 25, 2001, Plaintiff filed a Writ of Summons against Defendant in the Court of Common Pleas of Lehigh County.  See Exhibit "F".

Nearly eleven months later, on or about April 18, 2002, Plaintiff filed a Complaint in Lehigh County Court of Common Pleas, alleging that Defendant terminated Plaintiff's employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA")(Count I), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq. ("Title VII")(Count II), and in retaliation for purported opposition to discrimination under Title VII and the ADEA (Count III) and the Pennsylvania Human Relations Act, 43 P.S. § 955(d) ("PHRA")(Count IV).

On May 14, 2002, Defendant removed the Complaint to this Court based upon federal question jurisdiction.  By letter dated June 11, 2002, Defendant's counsel specifically warned Plaintiff's counsel:

> St. Luke's has authorized our firm to vigorously defend its decision
> and seek attorneys' fees.  As you know, this is not a discrimination
> case.  Your client asserted to the EEOC as true and correct under

> penalty of perjury that non-discriminatory reasons motivated St. Luke's decision. Moreover, she was replaced by Anne Klass, an older female, who held the position for over 16 months; it was not "temporary" as you suggested to me. Then, when Ms. Klass asked to return to a staff role, the position was filled by a 53 year old female in October, 2001.
>
> Your client's alleged complaint of "unfair treatment" is not statutorily protected activity under Title VII or the ADEA. Her PHRA claim is untimely as her charge was filed more than 180 days after the position elimination. The EEOC rendered a no-cause decision without even soliciting a single document or response from St. Luke's.

See letter to Plaintiff's counsel attached hereto as Exhibit "G".

On June 14, 2002, Defendant filed its Motion to Dismiss the Complaint and supporting Memorandum of Law. Defendant also requested attorneys' fees and sanctions based on the frivolous nature of the Complaint.

On July 1, 2002, Plaintiff's counsel filed an Amended Complaint. In the Amended Complaint, Plaintiff's counsel maintained all three federal claims, withdrew the time-barred claim under the PHRA and in its place, added a new claim under the Pennsylvania Wage Payment & Collection Law, 43 P.S. §§ 260.1 et seq. (Count IV) ("WPCL"). After surviving the limited scrutiny of Fed. R. Civ. P. 12 (b)(6), this case proceeded through discovery.

On or about April 29, 2003, the Honorable Mary A. McLaughlin granted Defendant's Motion for Summary Judgment dismissing all of Plaintiff's federal claims against St. Luke's. See Opinion attached hereto as Exhibit "H".[2] Specifically, the opinion states that Plaintiff failed

---

[2] However, due to an outstanding Motion for Sanctions against Plaintiff and her counsel, the Court did not enter an Order granting Defendant's Motion for Summary Judgment until May 13, 2003.

to establish a prima facie case under either the ADEA or Title VII, and that Plaintiff failed to establish a prima facie case of retaliation under either the ADEA or Title VII.

Regarding to Plaintiff's age claim, the opinion specifically states that Plaintiff has not "provided evidence to support her allegations" of discrimination. See Exhibit "H" at pp. 11-12. The Court also found that the "plaintiff has not provided the court with any evidence to show that this male was in any way similarly situated to her. The mere allegation that a male was hired by St. Luke's is not enough to make out a prima facie case for sex discrimination." Id. at p 13. (emphasis supplied). Additionally, with respect to Plaintiff's retaliation claims, the court found that:

> [T]he plaintiff's written complaint accused Ms. Cavacini of treating Ms. Klass, an older female, better than Ms. Bartholomew and other members of the department; the Court cannot see how Ms. Schaller "should have known" that the complaint was about age or sex discrimination.

Id. at p. 15. The Court also found that Plaintiff failed to show that Defendant's reasons for its actions were pretextual.

During the pendency of this litigation, Plaintiff demanded $100, 000.00 for complete settlement of her claims. See Plaintiff's demand letter attached hereto as Exhibit "I". In June 2002, at the early stages of this litigation, Defendant again offered Plaintiff the severance package that was presented to her at the time her employment was terminated.[3] See Letter to Plaintiff's Counsel attached hereto as Exhibit "G". Plaintiff offered to settle this case for her original severance package only after Defendant had invested substantial time, money and

---

[3] The severance package included six (6) months' salary and health benefits as well as job placement services. At no time during this litigation did Defendant make a settlement offer other than what had been offered to Plaintiff at the time her employment was terminated.

resources on conducting and completing discovery and filed and argued its Motion for Summary Judgment.

Defendant incurred attorney's fees in the amount of thirty-one thousand six hundred and sixty-three dollars and fifty cents ($31,663.50) in defending this action. This total was calculated based on an hourly rate of one hundred sixty dollars ($160.00) for the services of Scott C. Heckman, Esquire and one hundred forty-five dollars ($145.00) for the services of Sean M. Hart, Esquire. Attorney Heckman expended 86.7 hours on this case and Attorney Hart expended 122.7 hours. These rates are commensurate with rates charged by lawyers of similar skills, experience and reputation in the Lehigh Valley. <u>See</u> Affidavit of Quintes D. Taglioli, Esquire attached hereto as Exhibit "J".

Clearly, the fact that Plaintiff's sworn statement to the EEOC is in direct contradiction with the material allegations of her complaint makes the frivolous nature of Plaintiff's Complaint even more glaring. As such, and pursuant to the fee shifting provision of the ADEA, 29 U.S.C. § 626(b)[4] and Title VII 42 U.S.C. § 2000e-5(k), Defendant should be awarded its attorney's fees incurred in defending this action.[5]

## II.    LEGAL STANDARD

---

[4] While the text of the ADEA does not specifically provide that attorney's fees can be awarded to prevailing defendants, numerous courts have held that such an award is proper. <u>See e.g.</u> <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1437-38 (11th Cir. 1998); <u>Newhouse v. McCormick & Co.</u>, 130 F.3d 302, 304 (8th Cir. 1997); <u>Miller v. State Chemical Mfg. Co.</u>, 706 F.Supp. 1166, 1172 (W.D.Pa. 1988).

[5] Title VII provides : "in any action or proceeding under this subchapter the court . . .may allow the prevailing party . . . a reasonable attorney's fee . . . as part of costs . . ." 42 U.S.C. § 2000e-5(k) (West, 2002).

The standard for awarding attorney's fees under the ADA and ADEA to a prevailing defendant differs from that which applies to a prevailing plaintiff.  While prevailing plaintiffs should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust, a prevailing defendant is entitled to fees upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.  EEOC v. L.B. Foster Co., 123 F.3d 746 (3d Cir. 1997) (quoting Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).

In L.B. Foster, the Third Circuit set forth several factors to consider in determining whether a fee award is appropriate to a prevailing defendant.  They are:

    (1)    whether the plaintiff established a prima facie case;

    (2)    whether the defendant offered to settle; and

    (3)    whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.

L.B. Foster Co., 123 F.3d at 750-51.  The L.B. Foster court noted that cases where findings of "frivolity" have been sustained have typically been decided in defendant's favor on a motion for summary judgment.  Id. at 750.  The Third Circuit has construed the term "frivolous" to mean, among other things, "having no reasonable ground or purpose."  Deutsch v. U.S., 67 F.3d 1080, 1085-85 (3d Cir. 1995).  In addition to the above three factors, the court may also consider: (4) whether the issue was one of first impression requiring judicial resolution; and (5) whether the controversy is based sufficiently upon a real threat of injury to the Plaintiff.  Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 158 (3d Cir. 2001). In this case, it is clear that

Plaintiff's claim was frivolous and that an award of attorney's fees to Defendant would be proper.

### III.   ARGUMENT

Pursuant to the United States Supreme Court's holding in <u>Christianburg</u>, <u>supra</u>, and the Third Circuit Court of Appeals' holding in <u>L.B. Foster</u>, attorney's fees are clearly awardable to Defendant in this case because of the frivolous nature of Plaintiff's claims. As stated in the Opinion of the Honorable Mary A. McLaughlin, Plaintiff failed to satisfy the first element of the <u>Christianburg</u> analysis in that she did not establish a prima facie case of discrimination. Therefore, this factor clearly weighs in favor of granting Defendant's request for attorney's fees.

Regarding the second factor of the <u>Christianburg</u> analysis, Defendant did make a formal settlement offer in June, 2002, at the very outset of this litigation. However, it was the same severance package that had been presented to Plaintiff at the time her employment was terminated, and was offered only because Defendant had expended no significant time or attorney's fees at the administration level. Indeed, the EEOC dismissed Plaintiff's frivolous allegations of discrimination on the basis of her submission alone, without even requesting a position statement or single document from Defendant. <u>See</u> Exhibit "D". In essence, Defendant made no offer to settle the case above what had been offered to the Plaintiff prior to the start of this litigation. This, too, weighs in favor of an award of attorney's fees.

Obviously, Plaintiff's case did not proceed to a full trial on its merits. As such, this factor mitigates in favor of an award of attorney's fees to St. Luke's. Clearly, Plaintiff's failure to produce any evidence of discrimination in this highlights the frivolous nature of her complaint. <u>See</u>, <u>e.g.</u>, <u>Stefanoni v. Board of Chosen Freeholders</u>, Nos. 01-3755 & 02-1379 2003 U.S. App.

LEXIS 7398 at *10 (3d Cir. April 17, 2003)(fees award in excess of ninety thousand dollars ($90,000.00) to prevailing Title VII defendant upheld by the Third Circuit where plaintiff failed to produce any evidence to support Title VII claim against defendant); Ansley v. Valley Transit Inc., 162 LRRM 2879 (S.D.N.Y. 1999)(finding plaintiff's claims frivolous and unreasonable where plaintiff pursued litigation despite (1) an administrative finding of insufficient evidence to support a discrimination claim, and (2) no evidence even at the close of discovery to support Plaintiff's claim of discrimination).  As in the cases cited above, Defendant has clearly demonstrated the frivolous nature of Plaintiff's claims of "discrimination."

However, Plaintiff's complaint goes beyond frivolity.  This is most glaringly displayed in Plaintiff's retaliation claims under the ADEA and Title VII.  With regard to those claims, the Court observed that the Plaintiff's deposition testimony as well as her sworn statements in her EEOC charge revealed that Plaintiff believed that she was retaliated against because she reported code alarm violations.  These allegations are in direct contradiction to the allegation of retaliation made in her Complaint wherein she alleged retaliation based on her purported opposition to age/sex discrimination.

Additionally, Plaintiff's case is not an issue of first impression before this Court.  Rather, it is a run-of-the-mill discrimination/retaliation complaint.  Therefore, this factor weighs in favor of an award of attorney's fees in this case.

Lastly, there was no threat of injury to the Plaintiff in this case.  Discovery has shown that Plaintiff has been working full-time for nearly two (2) years and that Plaintiff waited approximately eleven (11) months after she filed her Writ of Summons to file a Complaint.  This factor also weighs in favor of an award of attorney's fees to Defendant.  This Honorable Court

should properly award the fees incurred in defending against Plaintiff's unsubstantiated, frivolous claims.

**WHEREFORE,** Moving Defendant, St. Luke's Hospital - Allentown Campus, respectfully requests that this Honorable Court **GRANT** its Motion for Attorney's Fees and enter an Order in the form attached.

                                        Respectfully submitted,

                                        HEIMBACH, SPITKO & HECKMAN

                                        By_____
                                               Sean M. Hart, Esquire
                                             I.D. No. 82084
                                             535 Hamilton St., Suite 200
                                             Allentown, PA 18101
                                             (610) 821-7000

                                        Attorneys for Defendant,
                                        St. Luke's Hospital  - Allentown Campus

Date:   May 27, 2003

A:\Defendant's MOL in Support of Motion for Attorneys fees.wpd